Brady, J.
The defendant moves, pursuant to Mass.R.Crim.P. 25(b)(2), to set aside the September 16, 1996 jury verdict of guilty of trafficking in cocaine (over 100 grams but less than 200 grams) and for an order of a not guilty verdict. The defendant contends that by reason of his conviction after a guilty plea of possession with intent to distribute cocaine in the Plymouth District Court prior to trial in this case, the prosecution of the instant trafficking indictment violates the double jeopardy clause of the United States Constitution. For the reasons discussed below, I allowed the defendant’s motion to set aside the jury verdict on February 12, 1997.
BACKGROUND
The basic facts are these. On February 1, 1994, the police obtained a search warrant for an apartment rented to one Heidi Smith at 31 Seaview Street, Plymouth, and for a motel room rented to defendant Gregory A. Rabb at the Bayview Motel at 20 Main Street, Kingston. The Plymouth apartment was within one-half mile of the Bayview Motel in Kingston. The information which the police had which led to the search warrants was that crack cocaine was stashed at the Bayview Motel for sale at the Smith apartment.
The police first executed the search warrant at the Smith apartment in Plymouth. The defendant Rabb, among others, was found there and arrested. The police found several rocks of crack cocaine on the floor *428 near the defendant. Police also found two pagers and a two-way walkie talkie radio in the apartment. The police then executed the search warrant at the Bayview Motel, finding a package containing 31.02 grams of 90 percent pure cocaine in a cereal box, and 82.05 grams of 89 percent pure cocaine in a radiator. The police also found a walkie talkie radio of an identical brand to the one found in the Plymouth apartment. At the police station, Rabb admitted that the 82.05 grams of cocaine found in the radiator were his, but claimed that the 31.02 grams found in the cereal box belonged to a Mr. Winn.
As a result of the execution of the two search warrants, the following charges were lodged against Rabb in the Plymouth District Court: first, arising from the Bayview Motel search, possession of cocaine with intent to distribute and trafficking in cocaine (9459 Cr. 0357, Counts B and C); second, arising from the Smith apartment search, possession of cocaine and possession of cocaine with intent to distribute (9459 Cr. 0361, Counts A and B). See Exhibit A for complaint and docket on case 9459 CR 0361. On May 2, 1994, the Bayview Motel based charges were dismissed and Rabb was indicted for trafficking in cocaine. See Exhibit B.
Prior to trial in this matter, Rabb pled guilty to the still pending district court charges and was given concurrent one-year house sentences, with six months to serve.[1] Thereafter, on August 5, 1996, he moved to dismiss the instant indictment on the ground of double jeopardy. I denied this motion prior to trial. See docket entry 17. This case then proceeded to trial. Rabb’s contention at trial was that he and Winn operated independently from the Bayview Motel and that he was only responsible for the bag containing 82.05 grams. The juiy disagreed, finding that Rabb constructively possessed more than 100 grams of cocaine with the intent to distribute. He was thereafter sentenced to the mandatory minimum ten years to ten years and one day.
The Commonwealth’s theory at trial, as articulated by the prosecutor in his opening statement, was that Rabb was running a cocaine distribution business, with the “retail” store being in the Smith apartment in Plymouth and the “warehouse” being in the Kingston motel. The walkie-talkies were used to communicate between the Plymouth apartment and the Kingston motel. The police confirmed that the walkie-talkies were set on the same frequency. Rabb admitted to the police that he bought crack cocaine prepackaged and wrapped in Dorchester, brought it to the Bayview Motel, then would sell the cocaine at Smith’s Plymouth apartment. The crack cocaine found in the motel was wrapped in the same manner, was the same size, and had the same color and consistency as the crack cocaine seized at Smith’s apartment.
DISCUSSION
The Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the same offense after a defendant is either acquitted or convicted, and prevents the state from trying a defendant twice simply by dividing a single continuing offense into two separate offenses. Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306-07 (1984); Gallarino v. Commonwealth, 362 Mass. 728, 732-33 (1975); Tarrant v. Ponte, 751 F.2d 459, 461 n.3 (D.Mass. 1984). The proscription against placing a defendant twice in jeopardy for the same offense has long been recognized as part of the common law of Commonwealth, and has become a matter of constitutional right by the application to the states of the Fifth Amendment. Thames v. Commonwealth, 365 Mass. 477, 479 (1974); Costarelli v. Commonwealth, 374 Mass. 677, 681 (1978). A defendant claiming double jeopardy has the burden of presenting sufficient evidence to establish a prima facie nonfrivolous claim of being placed twice in jeopardy for the same offense. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments at issue charge separate offenses. United States v. Chagra, 653 F.2d 26, 34 n.8 (1st Cir. 1981); United States v. Booth, 673 F.2d 27, 30 (1st Cir. 1982).
Under the Fifth Amendment, the test to determine whether multiple prosecutions would violate double jeopardy is the Blockburger test, which inquires whether each offense contains an element not contained in the other; if not, they are the same offense and double jeopardy prohibits successive prosecution or additional punishment. Blockburger v. United States, 52 S.Ct. 180, 183 (1932); United States v. Dixon, 113 S.Ct. 2849, 2856 (1993). Massachusetts courts utilize the “same evidence” standard in cases of successive prosecution, under which the test for identity of offenses is whether the defendant might have been convicted in the earlier prosecution by proof of the facts charged in the later indictment or complaint. Kuklis v. Commonwealth, 361 Mass. 302, 306-07 (1972); Commonwealth v. Gallarelli, 372 Mass. 573, 577-78 (1977); Commonwealth v. Levia, 385 Mass. 345, 350 (1982). Both these tests necessarily operate so that a defendant who has been tried for a lesser included offense cannot then be prosecuted for the greater offense and vice versa, with limited exceptions. Brown v. Ohio, 432 U.S. 161, 166 (1977): Costarelli v. Commonwealth, supra at 685.
Rabb was charged in Plymouth District Court with possession with intent to distribute cocaine in violation of G.L.c. 94C, §32A and in Superior Court with trafficking in cocaine in violation of G.L.c. 94C, §32E. The statutory elements of possession with intent to distribute are 1) the knowing or intentional possession of cocaine, 2) with intent to distribute. G.L.c. 94C §32A(a) (1995). The statutory elements of trafficking, *429 as relevant to Rabb’s case, are 1) the knowing or intentional possession of cocaine, 2) in a quantity exceeding 14 grams, ofbetween 100-199 grams 3) with intent to distribute. G.L.c. 94C, §32E(b) (1995). It is well established that possession of cocaine with intent to distribute is a lesser included offense of trafficking in cocaine, with trafficking an aggravated offense based on the quantity of drugs involved. Commonwealth v. Chappee, 397 Mass. 508, 523 (1986); Commonwealth v. Filippidakis, 29 Mass.App.Ct. 679, 679 n.1 (1991); Commonwealth v. Cormier, 41 Mass.App.Ct. 76, 76 (1996).
Under the Blockburger test, the Commonwealth could not convict Rabb of both possession with intent to distribute and trafficking with respect to the same amount of cocaine, because one crime is a lesser included offense of the other. Moreover, applying the “same evidence” test, Rabb could have been convicted in District Court of the offense of possession with intent to distribute by proof of the facts charged in the later indictment for trafficking: that he possessed with the requisite intent the 113 grams of cocaine found at the Bayview Motel in Kingston. Thus, the District Court and Superior Court charges are identical under a literal application of these doublejeopardy doctrines.
I am not satisfied, however, that the application of the Blockburger test or the “same evidence” test compels that result in this case. The Commonwealth contends that two charges are proper because they involve physically distinct quantities of cocaine located in two different towns. Simply put, the issue is this: has Rabb committed two crimes under the Controlled Substances Act because he simultaneously possessed with the intent to distribute several rocks of crack cocaine in Plymouth, and 113 grams of crack cocaine in Kingston? Or, as the defendant contends, has he committed only one continuous crime of possession because the cocaine was all from the same stash and he intended to distribute all of it.
A similar inquiry is frequently raised in the context of determining whether the Commonwealth may charge a defendant with multiple violations of the same statute, arising from a single course of conduct, without implicating double jeopardy concerns. Although Rabb was in fact charged and convicted under two separate sections of the Controlled Substances Act, the only difference between possession of cocaine with intent to distribute under §32A and trafficking under §32E is the quantity of cocaine involved, because §32E contains a threshold quantity after which greater penalties are imposed for larger quantities. Thus, in the present case, it is appropriate to treat §32A and §32E of the Controlled Substances Act as a single statute for the purposes of double jeopardy and to apply the analytical framework of multiple charges under the same statute.
Where a single statute is involved and the issue is whether two or more discrete offenses were proved under that statute rather than merely a single continuing offense, the “same evidence” test does not apply. Commonwealth v. Donovan, 395 Mass. 20, 28, 31 (1985); Commonwealth v. Gurney, 13 Mass.App.Ct. 391, 401 (1982); Commonwealth v. Winter, 9 Mass.App.Ct. 512, 527 (1982). The proper analysis in such cases focuses on the “allowable unit of prosecution” intended by the Legislature for that offense. Commonwealth v. Levia, 385 Mass. 345, 347-48 (1982); Commonwealth v. Gurney, supra at 401. Any ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity; thus, where the court is unable to ascertain the intent of the Legislature, the defendant is entitled to the benefit of any rational doubt. Rewis v. United States, 401 U.S. 808, 812 (1971); Commonwealth v. Crosscup, 369 Mass. 228, 234 (1975); Commonwealth v. Beacon Distributors, Inc., 14 Mass.App.Ct. 570, 573 (1982), rev. den., 388 Mass. 1101 (1983).
The Appeals Court has established that convicting a defendant under both c. 94C, §32A(c) for distribution of cocaine and under §32E(b)(l) for trafficking in cocaine in an amount exceeding fourteen grams does not violate double jeopardy, where the defendant sold a small bag of cocaine to an undercover police officer and police then found eighty more bags of cocaine in his apartment. Commonwealth v. Richardson, 37 Mass.App.Ct. 482, 489 (1994), rev. den., 419 Mass. 1104 (1995). The court reasoned that “(t]rafficking and distribution of cocaine are not so closely related as to prevent separate conviction and punishment for each so long as separate and distinct quantities of cocaine underlie the two charges; the Legislature intended to punish the distribution of one quantity of a drug separately from possession with intent to distribute the dealer’s remaining stash.” Id. See also Commonwealth v. Diaz, 383 Mass. 73, 82, 84-85 (1981) (holding that under c. 94C, §32, it does not violate double jeopardy to convict a defendant of both distributing one bag of heroin and possessing in a separate cache seven other bags with intent to distribute them in the future, because the statute denounces particular acts disjunctively, indicating the legislative intent as to appropriate unit for purposes of punishment). The completed distribution of a quantity of drugs is easily understood as a criminal act that is separate and distinct from the possession of additional drugs intended for future sale.
Massachusetts courts have not, however, addressed the more difficult question of whether the Legislature intended the simultaneous possession of separate quantities of the same drug at two different locations to constitute a single unit of prosecution under c. 94C, §32A and/or §32E or two units of prosecution, one for each location of possession. Federal courts in several other jurisdictions have addressed the issue of whether multiple charges under the federal statute, 21 U.S.C. §841, based on a *430 defendant’s simultaneous possession of separate quantities of drugs violates double jeopardy. The critical principle that emerges from these federal cases is that the proper unit of prosecution under the Federal Controlled Substances Act is a defendant’s “stash.” A defendant can thus be prosecuted separately for possessing separate stashes of illegal drugs without violating double jeopardy. The cases diverge, however, on the proper method for determining whether drugs possessed by a defendant simultaneously in two or more physically separate locations constitute a single stash or multiple stashes for purposes of prosecution.
One line of reasoning is exemplified by the decision in United States v. Johnson, which describes the critical analysis as follows:
In drug cases, the question frequently arises whether a defendant’s entire cache of drugs is to be considered as a single unit or as separate units for purposes of defining the extent of his criminal activity. Although a supply of narcotics generally is not divisible for purposes of prosecution, various stashes of that drug are considered separate where the evidence indicates that they were intended for different purposes or transactions . . . The proper focus of a “separate stash” inquiry is not on logistics but on demonstrated intent. United States v. Johnson, 977 F.2d 1360, 1374 (10th Cir. 1992), cert. den., 506 U.S. 1070 (1993).
In Johnson, a search of the defendant’s truck revealed two thermos bottles containing methamphetamine and a brown prescription vial containing a white substance, for which the defendant was charged and convicted of one count of possessing amphetamine in violation of 21 U.S.C. §844(a) and one count of possessing amphetamine with intent to distribute in violation of 21 U.S.C. §841(a)(l). Id. at 1367, 1373. The defendant argued that all the amphetamine was part of the same criminal transaction for purposes of double jeopardy, such that two separate convictions for what was one offense of amphetamine possession was improper. Id. at 1373. However, the court rejected this argument and concluded that since the small quantity of amphetamine in the brown vial was for the defendant’s personal use and the larger quantity in the two thermoses for commercial sale, the two quantities were distinct units of drugs giving rise to two separate offenses, such that conviction of both possession and possession to distribute did not violate double jeopardy. Id.
Similarly, in United States v. Blakeney, 753 F.2d 152 (D.C. Cir. 1985), the defendant was charged with one count of possession with intent to distribute 4.8 lbs of marihuana found in his apartment, and a separate count of possession with intent to distribute additional marihuana found in seven manila envelopes at his place of employment several miles away. Id. at 154. Noting that there was no close interrelation between the transactions involving the drugs at the apartment and the drugs at the place of employment, the court found no violation of double jeopardy in the multiple charges, because circumstances suggested two separate schemes to distribute drugs out of two different locations, under different factual circumstances. Id. at 154-55. The court thus appears to have concluded that there were two distinct stashes for purposes of prosecution giving rise to two separate offenses.
Conversely, in United States v. Woods, 568 F.2d 509 (6th Cir.), cert. den., 435 U.S. 972 (1978), narcotics officers arrested the defendant at the airport and searched his car, discovering separate caches of heroin of differing weights and purities under the front seat of the car and in the trunk. Id. at 511-12. In addition, the narcotics officers had earlier obtained possession of a third cache of heroin which had been delivered to them by the defendant’s accomplice. Id. The defendant was then charged with three counts of possession with intent to distribute under 21 U.S.C. §841(a)(l). Id. at 510. The court held that the multiple possession charges violated double jeopardy concluding that despite the separate packaging and storing of the drugs, the defendant had engaged in a single course of conduct involving possession with intent to distribute heroin, and thus could only be charged with one possession offense. Id.
In United States v. Fiallo-Jacome, 784 F.2d 1064 (11th Cir. 1986), the defendant was arrested in Plantation, Florida with one kilogram of cocaine intended for immediate sale, and police then discovered that he was also storing a large supply of cocaine at a co-defendant’s apartment in Miami. Id. at 1065. The defendant was charged with one count of possession of cocaine in Plantation, Florida (located in Southern Florida) on May 17, 1983, and a second count of possession of cocaine in Miami and elsewhere in Southern Florida from February to May 26, 1983. Id. at 1066. In order to determine whether the multiple charges violated double jeopardy, the court considered whether the defendant had continuously possessed cocaine or whether he had it in his possession on two distinct occasions, “a difficult question because cocaine is a chemical powder that does not exist in readily identifiable physical units.” Id.
The court noted that the defendant had been warehousing cocaine at the Miami apartment for a four month period, regularly adding and removing cocaine from the stash, and on May 17th, had removed cocaine from that stash and transported it to Plantation for sale. The court thus concluded that because the cocaine in the first charge clearly came from the larger stash of cocaine involved in the second charge, double jeopardy principles dictated that the defendant had committed only a single offense of continuous possession of one supply of cocaine rather than two separate offenses, one in Miami and one in Plantation. United States v. Fiallo-Jacome, 784 F.2d at 1066-67. The *431 court noted that the result might be different if the evidence showed that the kilogram transported to Plantation had been stored at a location other than the Miami apartment, or was otherwise distinguishable as part of a separate stash. Id. at 1067.
Applying this approach to the present case, it is undisputed that the cocaine found in Smith’s apartment in Plymouth and the cocaine found in Rabb’s room at the Bayview Motel was part of a single scheme to distribute cocaine, with the motel serving as the “warehouse” and Smith’s apartment as the “retail store.” Rabb stored the stash of cocaine at the Bayview Motel and transported small quantities of it from time to time to Smith’s apartment in Plymouth as necessary to replenish her supply for immediate sale. That the two locations were connected by radios tuned to the same frequency strengthens the inference of a single intent as to the cocaine in both locations. No evidence has been presented to this Court to suggest that Rabb was selling cocaine directly out of his motel room, such that the cocaine at the two locations were separate supplies, representing two distinct schemes to distribute cocaine. Thus, the Commonwealth has failed to rebut Rabb’s showing of a single stash by some evidence that the quantity of cocaine seized at Smith’s apartment was not in fact taken from the larger stash at the Bayview Motel. The evidence reveals that Rabb continuously possessed the total amount of cocaine at issue, although several rocks of the cocaine were at some point transferred from Kingston to Plymouth. This Court therefore concludes that the cocaine possessed by Rabb at the two locations a mere half mile apart constitutes a single stash of drugs for the purposes of prosecution under G.L.c. 94C, §32A and/or §32E. Accordingly, Rabb could properly be charged and convicted with only one offense under the statute, trafficking under §32E for the total amount of cocaine.
This Court acknowledges that in a separate line of cases, several other federal courts have utilized a “logistics” approach to analyzing whether separate quantities of cocaine constitute a single stash, and thus a single unit of prosecution, for the purposes of double jeopardy. Focusing on the factual separateness of the drugs rather than the defendant’s intent with respect thereto, these courts have concluded that simultaneous possession of quantities of the same drug in two different locations may give rise to multiple charges of possession under the federal Controlled Substances Act without violating double jeopardy. For example, in United States v. Maldonado, 849 F.2d 522 (11th Cir. 1988), the defendant was arrested in Volusia County, Florida after leaving his home to distribute a quantity of cocaine found in his car upon arrest, and a subsequent search of his home in Seminole County, Florida on the same day revealed another larger quantity of cocaine stored there. Id. at 524. The defendant was charged in Count I with possession of nine ounces of cocaine in Volusia County on October 9, 1989 with intent to distribute in violation of 21 U.S.C. §841(a), and in Count II with possession of one pound of cocaine in Seminole County on October 9, 1989 with intent to distribute in violation of 21 U.S.C. §841(a) Id.
The defendant contended that the cocaine found in his home and the cocaine found in his car constituted a single stash, so that he could be guilty of only one charge of possession with intent to distribute. United States v. Maldonado, 849 F.2d at 524. The court held that convicting the defendant of two counts of possession with intent to distribute did not violate double jeopardy because each charge required proof of a different quantity of cocaine in different counties, the second count did not charge possession of an amount of drugs also included in the amount charged in the first count, and there was no showing of a continuous possession of one quantity of drugs such that the two counts of possession were not the same offense. Id. Accord United States v. Register, 931 F.2d 308, 309-12 (5th Cir. 1991); United States v. Privett, 443 F.2d 528, 531 (9th Cir. 1971); United States v. Vaughn, 859 F.2d 863, 864-65 (11th Cir. 1988), cert. den., 490 U.S. 1065 (1989).
Nonetheless, this Court is convinced that where a defendant simultaneously possesses the same drug in more than one location, the proper focus for purposes of the unit of prosecution under the Controlled Substances Act is the defendant’s demonstrated intent concerning the drugs, rather than any logistical separateness thereof. The critical question is whether the Legislature, in prohibiting the possession of cocaine with intent to distribute pursuant to G.L.c. 94C, §32A and/or trafficking pursuant to §32E intended to punish such possession at more than one location or intended that a single penalty attach to an unlawful course of conduct of possession. See Commonwealth v. Beacon Distributors, Inc., 14 Mass.App.Ct. 570, 573 (1982), rev. den., 388 Mass. 1101 (1983). The language of Sections 32A and 32E, which punish any person who “possesses with intent to manufacture, distribute or dispense a controlled substance” is unhelpful in this regard. However, the implication of interpreting these statutes so that a defendant’s simultaneous possession of the same drug in more than one location constitutes two separate offenses is clear.
Considering just the cocaine possessed by Rabb at the Bayview Motel in Kingston, 31 grams stored in a cereal box and 82 grams stored in the radiator, when charged with trafficking under §32E for the total 113 grams at this location, Rabb faced a minimum sentence of ten years imprisonment with a maximum sentence of twenty years. G.L.c. 94C, §32E(b)(3) (1995). Under §32E(b)(2), however, possession of twenty-eight or more grams but less than one hundred grams carries a mandatory minimum sentence of five years imprisonment with a maximum sentence of twenty years. G.L.c. 94C, §32E(b){3) (1995). The Commonwealth could not have charged Rabb under the *432 statute with two separate counts of trafficking for the total cocaine possessed in the Bayview Motel, thereby seeking one maximum sentence of twenty years imprisonment for the 31 grams in the cereal box and another maximum sentence of an additional twenty years for the 82 grams in the radiator, for a total penalty of forty years. The Legislature must have intended the punishable offense against society to be the possession of 113 grams of cocaine with intent to distribute it, rather than the possession of that cocaine in two different locations, a radiator and cereal box. It is improbable that the Legislature intended that a defendant who possesses 113 grams of cocaine in two different locations, a radiator and a cereal box, has committed more offenses against society than a defendant who possesses the same 113 grams with the same intent but in a single location, such that the former should be convicted of more crimes and receive greater punishment than the latter. Thus, the division of the single offense of possession of 113 grams of cocaine at the Bayview Motel into separate offenses in order to prosecute or punish Rabb multiple times would violate principles of double jeopardy. See Justices of Boston Mun. Court v. Lydon, supra at 306-07; Gallarino v. Commonwealth, supra at 732-33; Tarrant v. Ponte, supra at 461 n.3.
Likewise, where it is evident that the rocks of cocaine found in Plymouth and the 113 grams found in Kingston constitute a single stash of drugs with respect to which Rabb bore an identical intent, to sell them via an established warehouse/retail scheme, the defendant has engaged in one continuing offense of possession with intent to distribute in violation of c. 94C, §32E, and the Commonwealth cannot divide that single continuous possession of the stash into separate offenses without violating the double jeopardy clause. Had the Commonwealth charged and prosecuted Rabb for trafficking in the total stash, he would face a minimum penalty of ten years imprisonment and a maximum penalty of twenty years under §32E. However, by charging Rabb separately with possession with intent to distribute the rocks of crack cocaine found at Smith’s apartment and with trafficking for the 113 grams found at the Bayview Motel, he faced a potential sentence of up to ten years imprisonment under §32A in addition to the sentence of between ten and twenty years for trafficking under §32E.[2] This anomalous result cannot comport with the intent of the Legislature in prohibiting the possession of cocaine with intent to distribute; there is simply nothing to suggest that the Legislature intended each different location at which a defendant possessed drugs from the same stash to be a separate unit of prosecution. Compare Commonwealth v. Beacon Distributors, Inc., supra at 574 (concluding that simultaneous possession in one place of more than one item which falls within the statutory definition of “matter which is obscene” constitutes a single offense under G.L.c. 272, §29, given the unlikelihood that the Legislature intended one defendant to suffer an aggregate fine as large as $100,000 and/or a prison sentence of as long as 100 years, which would be the case if the defendant could be charged twenty times for simultaneous possession of twenty obscene films).
Finally, this Court emphasizes that in the face of uncertainty as to legislative intent, the defendant is entitled to the benefit of any rational doubt, and the court must resolve any ambiguity concerning the scope of this criminal statute in favor of the defendant. Rewis v. United States, supra at 812; Commonwealth v. Crosscup, supra at 234; Commonwealth v. Beacon Distributors, Inc., supra at 573. This Court concludes that the proper unit of prosecution under G.L.c. 94C, §32A and §32E is the defendant’s “stash” of a particular controlled substance, as determined by the defendant’s demonstrated intent with respect to the drug, regardless of the physical location thereof. Thus, in the present case, the total amount of cocaine possessed by Rabb on December 1, 1994 was a single stash of drugs, which was not properly divisible for purposes of prosecution. The Commonwealth has failed to demonstrate by a preponderance of the evidence that Rabb committed two discrete offenses under the Controlled Substances Act. Rather, Rabb engaged in a single offense of the continuous possession with intent to distribute the total amount of cocaine at issue, despite the fact that some of the stash was located at Smith’s apartment in Plymouth and the remainder at the Bayview Motel in Kingston. In dividing this single continuing offense of trafficking under c. 94C, §32E into two separate charges, and thereby convicting and punishing Rabb twice for the same offense, the Commonwealth violated the constitutional prohibition against double jeopardy. Accordingly, Rabb’s District Court conviction for possession with intent to distribute barred his later conviction of trafficking in Superior Court, which must be vacated by this Court.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to set aside the juiy verdict and enter a required finding of not guilty pursuant to Mass. R. Crim. P. 25(b)(2) be ALLOWED effective February 12, 1997.

 The exact date on the Plymouth District Court docket is obscure, but from the sentence one may infer that it occurred on May 23, 1996.

 tyhe fact that Rabb was not so sentenced does not affect this Court’s analysis of whether he was placed twice in jeopardy for the same offense. Multiple convictions will themselves constitute multiple punishment if they involve what amounts to the same offense, so that the imposition of concurrent sentences no longer cures a double jeopardy problem. Commonwealth v. Jones, 382 Mass. 387, 395-97 (1981).